IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (633) 336-6505 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 334020316529067, THAT IS STORED AT PREMISES CONTROLLED BY AT&T CORPORATION<br><br>USAO # 2022R03076 | Case No. 22-09043MB<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Russell W. Jewell, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this Affidavit in support of an application for a search warrant for information associated with a cellular telephone assigned call number (633) 336-6505, with International Mobile Subscriber Identity OR Electronic Serial Number 334020316529067 ("SUBJECT DEVICE"), which is stored at premises controlled by AT&T Corporation ("the Service Provider"), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. The information to be searched is described in the following paragraphs and in Attachment A and B. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the

information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since June 2010. As part of my duties as an FBI Special Agent, I have investigated criminal violations relating to white collar crimes, crimes against children, public corruption, civil rights violations, assault on a federal officer, and other federal violations. I have experience and have received training in conducting investigations, collecting evidence, and have used cellular phones and cellular tower information to further investigations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. § 1201(a) & (g)(1) (Kidnapping of a Minor); 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law); and 18 U.S.C. § 1512(b)(3) (False Statements), committed by AARON THOMAS MITCHELL while serving as a Customs and Border Patrol Officer (CBPO), will be identified in connection with location data associated with the SUBJECT DEVICE, as set forth below. There is also probable cause to search the property described in

Attachment A for fruits, evidence, and/or instrumentalities of this crime, as described in Attachment B.

## PROBABLE CAUSE

5.      On or about April 25, 2022, a fifteen (15) year old female, Minor Victim (MV) reported to Douglas Police Department that she had been raped earlier that day by a police officer.  According to MV, she was waiting for school to start when an unknown African American male drove up to where she was seated on a bench in the vicinity of 1325 North G Avenue, Douglas, Arizona.  Investigators later identified this individual as AARON MITCHELL, who was then-employed as a Customs and Border Protection Officer.  According to MV, MITCHELL identified himself as a police officer and asked to see her documents and had her turnover her backpack. MV, a United States citizen who lives in Mexico, complied with his order.  After MV presented her birth certificate and backpack to MITCHELL, MITCHELL ordered MV to get into his car and he told MV he was going to take her to the police station.  According to MV, rather than taking her to the police station, MITCHELL drove her to an apartment in Sierra Vista.  During the drive, MITCHELL asked MV her age to which she responded "15."  On the way to Sierra Vista, MITCHELL pulled over to handcuff MV's wrists behind her back and restrained MV's legs with some type of restraints around her ankles.

6.      MV stated that once they arrived at the apartment in Sierra Vista, MITCHELL parked his vehicle, and then walked to an apartment. Investigators later determined this was MITCHELL's residence.   MV was left in the vehicle restrained and

was told by MITCHELL to not make any noise. MITCHELL then returned to the vehicle with a dark colored jacket and keys. MITCHELL removed the restraints from MV's ankles and placed the jacket over her shoulders and back. MV was then walked from MITCHELL's vehicle to his apartment. According to MV, once inside the apartment, MITCHELL took MV to his bedroom where he repeatedly sexually assaulted her. MITCHELL eventually took MV back to Douglas and dropped her off near where he picked her up.

7. In connection with the above investigation, MITCHELL was federally charged with Kidnapping a Minor in violation in violation of 18 U.S.C. § 1201(a)(1) in CR 22-01545-TUC-RM. On November 30, 2022, a superseding indictment was issued, adding charges for Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242, and False Statements in violation of 18 U.S.C. § 1512.

8. MV's iPhone (phone number (633) 336-6505) was in her backpack when MITCHELL seized it and was never returned to her. According to MV, MITCHELL told her he was not going to return her backpack (which contained her phone, schoolbooks, and computer) because his fingerprints were on it.

9. On April 26, 2022, law enforcement took MITCHELL into custody, and MITCHELL provided a voluntary statement post-Miranda. MITCHELL reported that he became a CBP officer on June 28, 2021. MITCHELL admitted bringing MV to his apartment but denied all sexual contact. MITCHELL told law enforcement that he knew MV from seeing her cross the border to go to school and had previously hung out with her.

With regard to MV's backpack, MITCHELL said he didn't recall any backpack, claimed he did not know where her backpack was and denied getting rid of it.

10. Recorded video from the Mountain Vista Apartments where MITCHELL lived was collected by investigators as part of this investigation. The recorded video shows that on April 25, 2022, at a video timestamp of approximately 8:14 A.M., a red hatchback vehicle matching the description of MITCHELL's vehicle arrives and parks near MITCHELL's apartment. An individual matching the description of MITCHELL departed the driver's side of the vehicle and walks to MITCHELL's apartment. The individual then exits MITCHELL's apartment with what appears to be a dark colored jacket and walks back to the vehicle. He then enters the driver's side of the vehicle, exiting a few moments later, and also appears to briefly open the rear passenger side door and the front passenger side door before again returning to MITCHELL's apartment alone. The individual then returns to the vehicle from MITCHELL's apartment and ultimately opens the front passenger side door; a person matching the description of MV exits the vehicle with what appears to be a dark colored jacket over her shoulders and back. The two then walk towards and enter MITCHELL's apartment. A short time later, this same video shows an individual matching MITCHELL's description depart MITCHELL's apartment and returns to the vehicle. The individual opens the front passenger side door and retrieves what

appears to be a dark colored backpack before walking behind the apartment building and out of the camera's view.

11. An additional video recording was collected from the opposite side of the apartment building which shows MITCHELL walking towards the apartment complex dumpster with a dark colored backpack at a video timestamp of approximately 8:52 AM, tossing the backpack into the dumpster, and then jogging back towards his apartment without it.

12. On April 27, 2022, investigators spoke with the manager of the Mountain Vista Apartments regarding the pickup of the dumpster reflected on the video described above and were informed the dumpster had been emptied on April 25, 2022. Efforts to locate the trash from said dumpster were also not fruitful, as when investigators contacted the trash company, they learned the contents of the dumpster had already been compacted, crushed, and buried in a landfill and therefore would be extremely difficult, if not impossible, to locate.

13. Through this warrant, the government seeks location information regarding MV's phone in an effort to identify locations, including last known location, of the phone on the day of the events described above and thereafter. Investigation has revealed that the INTERNATIONAL MOBILE SUBSCRIBER IDENTITY (IMEI) of

MV's phone with assigned number (633) 336-6505, was 334020316529067 (SUBJECT DEVICE.)

14.  In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

15.  Based on my training and experience, I know that **AT&T** can collect cell-site data about the Target Telephone.  I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which they

provide service in their normal course of business in order to use this information for various business-related purposes.

16. Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information such as the location information described above. Based on my training and experience, I submit that this information can be used to identify the Target Telephone's location during the times relevant to the above-described events, and therefore may provide additional evidence of the crimes described.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **AT&T**, who will then compile the

requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

RUSSELL JEWELL
Digitally signed by RUSSELL JEWELL
Date: 2022.12.15 21:26:41 -07'00'

Russell W. Jewell
Special Agent
Federal Bureau of Investigation

Telephonically subscribed and sworn to before me on ____December 16____, 2022

_____
Hon. D. Thomas Ferraro
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (633) 336-6505, with International Mobile Subscriber Identity/Electronic Serial Number 334020316529067 (SUBJECT DEVICE), that are stored at premises controlled by AT&T ("the Provider"), headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

## ATTACHMENT B

## Particular Things to be Seized

I.      **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **May 1, 2022 through May 31, 2022**:

Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for the SUBJECT DEVICE during the period May 1, 2022 through May 31, 2022.

II.     **Information to be Seized by the Government**

Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for the SUBJECT DEVICE during the period **May 1, 2022 through May 31, 2022**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T, and they were made by AT&T as a regular practice; and

b. such records were generated by AT&T's electronic process or system that produces an accurate result, to wit:

 1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T in a manner to ensure that they are true duplicates of the original records; and

 2. the process or system is regularly verified by AT&T, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____  _____
Date                                                        Signature